KLEES, Judge.
In order to resolve rules filed for Alimony Pendente Lite, Possession of Family Residence, Dissolution of Temporary Restraining Order, and Damages for Wrongful Issuance, Appellant Floydale Teague and Appellee Ann Marie Teague negotiated and agreed to a Consent Judgment which was filed on February 25, 1982 and signed on March 1, 1982.
In a portion of the Consent Judgment appellant was held responsible:
“... to pay for and insure that Ann M. Teague is carried as an insured, not a dependent, on the group health insurance policy, The Hartford, # GRH 011717; for a period of one year, from the date of the signing of the Partition Agreement.”
Furthermore, the consent judgment was incorporated into the community property agreement and the pertinent parts of that agreement read:
“The Hartford, group health insurance policy, # GRH 011717. Ann Marie Teag-ue is to be carried as an ‘insured’, not as a dependent. The premiums on this policy are to be paid for one year from the signing of this Partition Agreement by Floydale Teague. After that one year period, Ann Marie Teague shall have the privilege of converting said policy to a private policy. For the initial one year period Ann Marie Teague and Floydale Teague agree to name each other as reciprocal beneficiaries on their respective policies.”
“Floydale Teague agrees to pay the insurance premiums for Ann Marie Teague for a one year period from the signing of this Partition Agreement on two insurance policies: (a) Natonal Home Life Assurance Company, policy number WG 5300, and (b) The Hartford group health insurance, policy number GRH 0117178.”
On April 26, 1982, the parties were divorced. In September of 1982, appellee was in need of medical care and entered the hospital. Through the process of being admitted into the hospital appellee was informed that she was not insured under the applicable policy. Appellee made demand on appellant for payment, which was denied. Appellee then filed a Rule to Show Cause why appellant should not repay ap-pellee all funds which should have properly been covered by the insurance policy he was required to provide. The trial judge rendered judgment in favor of appellee and against appellant for the sum of $6,284.85 along with interest and costs. This amount represented the total dollar figure for all medical bills presented by appellee relative to her hospital stay in September, 1982.
Appellant filed a suspensive appeal from this judgment, and makes two assignments of error. The first is that the trial judge committed reversible error in granting judgment in appellee’s favor, as appellee clearly had not shown that a breach of the *624 community property agreement had been committed. Second, the trial judge committed reversible error in awarding the sum of $6,284.85 as damages insofar as there was no proof offered as to what portion, if any, of that sum would have been covered under any insurance policy.
Appellant suggests that in order to fulfill his responsibilities to appellee relative to the provisions of health insurance as required by the March 1, 1982 Consent Judgment and the associated Partition of Community Property, he merely had to 1) pay the premiums, whatever they might be, for appellee’s insurance for a period of one year, and 2) to have appellee’s status changed from a “dependent” to an “insured”.
The issue of whether or not appellant paid appellee’s health insurance premiums does not require discussion as appellant acknowledges that appellee’s status was never changed from that of a “dependent” to that of an “insured”. A provision of the insurance policy in question (The Hartford No. GRH 011717) denies dependent coverage to a spouse or former spouse if he or she is legally separated or divorced from the insured. Thus appellee was not covered by the health insurance policy regardless of whether or not appellant paid the insurance premiums for appellee as a “dependent”.
Appellant urges the court that his inability to have appellee covered under the insurance policy in question as an “insured” is excused through Section 2 of Louisiana Civil Code Article 1933 which provides that:
... 2. Where, by a fortuitous event or irresistible force, the debtor is hindred from giving or doing what he has contracted to give or do or is from the same causes compelled to do what the contract bound him not to do, no damages can be recovered for the inexecution of the contract.
Appellant reasons that he had contracted to do what he ultimately could not do: he could not force any insurance company to insure his wife.
It is not necessary to determine whether or not the insurance company’s decision not to extend coverage as an “insured” to ap-pellee under their policy No. GRH-011717 is “a fortuitous event or irresistiblé force” as defined in the Civil Code, as we believe Section 3 of Article 1933 responds to the situation at hand. Louisiana Civil Code Article 1933, Section 3 states:
... 3. There are two exceptions to the last rule: first, when the party in default has by his contract expressly or impliedly undertaken the risk of the fortuitous event, or of the irresistible force; secondly, if the fortuitous event, or case of force, was preceded by some fault of the debtor, without which the loss would not have happened.
The nature of the provision of the consent judgment that was allegedly violated indicates that the benefit would favor the appellee while the responsibility for insuring that coverage was available was assumed by the appellant. The time frame during which the final wording of the Consent Judgment was completed allowed ample opportunity for appellant to investigate the availability of insurance coverage for appellee under his policy (Hartford No. GRH-011717). Under such circumstances, it must be presumed that appellant was aware of what he was contracting to do and that he expressly or impliedly assumed the risks involved in insuring that such coverage as an “insured” would be available to appellee for the term agreed upon.
The Louisiana Supreme Court observed in Eugster & Co. v. Joseph West & Co., 35 La.Ann. 119 (La., 1883) at 122:
“... They were to deliver the corn from the Ohio river between December 14th and January 3d, the season when severe cold is usual, and a frozen river an event that might be forseen. It was a contingency so probable and so seasonable that it ought to have entered into their calculation of the time for the execution of the contract, and no doubt would, but for their confidence in the impossibility of its occurrence in the then stage of the river. In either case they must be presumed to *625 have contracted with reference to it. The assumption of the risk of the freeze is implied from the nature of the contract and the time and manner of its execution.”
In light of the specificity of that provision of the consent judgment regarding appellant’s responsibility to provide health insurance to appellee as an “insured” under his work policy, the availability vel non of such coverage should have been forseea-ble. The trial judge in his oral reasons for judgment noted:
“From the evidence produced here, it is evident that there has been a significant history of illness on the part of Mrs. Teague, and unquestionably the motivating factor or reason for including such an agreement was to be sure that any hospitalization or health treatment that was required by her would be paid, and Mr. Teague agree to pay for and to insure her, that this would be done. The fact that Hartford may or may not carry or be willing to carry her is immaterial. He knew that the motivating reason for the agreement was that she was not to pay for it. The intent obviously was to keep her from having to pay medical bills incurred by her for one year, and it was during this period of one year that this illness occurred and these expenses were incurred. Now, the fact that he couldn’t do it through the Hartford is immaterial. He assured her and the agreement between them is that he would do it. The fact that he couldn’t get Hartford to do it is immaterial. She didn’t contract with Hartford for it. Under the agreement for the payment of alimony and the subsequent agreement for the partitioning of the property, he agreed to pay for and to insure her that she would have hospitalization coverage. The fact that he was unable to obtain it is immaterial. He contracted to do so.”
The trial court saw the witnesses and heard their testimony and then made factual conclusions. Without having to endeav- or to redefine “fortuitous event or irresistible force” we agree with the trial court’s conclusion that appellant is responsible to pay those expenses that the insurance policy would have paid.
In view of appellant’s second assignment of error, we must agree that the trial court erred in awarding the total amount of expenses incurred by appellee rather than only that percentage of expenses that would have been covered by appellant’s group insurance plan, The Hartford No. GRH-011717.
As we read the record, the total amount of expenses incurred by appellee was $6,684.85. Itemized as follows:
Mahorner Clinic $675.00
Dr. Orestano — Internist $285.00
Dr. Steiner — cardiologist $1,350.00
West Jefferson Hospital $3,924.85
Dr. Cranmer — Urologist $350.00
West Jefferson Hospital $100.00
TOTAL $6,684.85
The pamphlet admitted into evidence as D-l, detailing the health insurance benefits that would have been available to appellee, if appellant had been successful in obtaining coverage for appellee as an “insured” provides:
1) A cash deductible provision would decrease the total by $100.00, thereby leaving $6,584.85.
2) The insurance plan would pay 100% of the first $1,500 of expenses incurred for each hospital confinement and the remainder would be subject to the co-insurance factor $6,584.85 - $1,500 = $5,084.85.
3) The co-insurance factor is 80% of the first $3,000 of co-insured expenses, $5084.85-$3,000 = $2,084.85
4) Any further covered expenses incurred during that calendar year will be paid in full.
Thus $5,984.85 of medical expenses should have been recoverable by appellee if appellant was successful in obtaining “insured” coverage for her. The trial court’s judgment should be reduced to $5,984.85 with interest and costs.
For the foregoing reasons, the judgment of the trial court in favor of Ann Marie *626 Teague and against Floydale Teague in the amount of $6,284.85 is hereby amended and reduced to the amount of $5,984.85 along with interest and costs. In all other respects the judgment of the trial court is affirmed. Each party to bear his own costs of this appeal.
AMENDED IN PART, AND AS AMENDED, AFFIRMED.